Baudouin DUNAND, as assignee, Plaintiff,

v.

**BOWLING GREEN STORAGE & VAN CO., Defendant.**

**No. 86 Civ. 8045 (WCC).**

United States District Court, S.D. New York.

Jan. 31, 1991.

---

J. Owen Zurhellen, III, New York City, for plaintiff.

Speyer & Perlberg (Dennis M. Perlberg, Steven D. Brower, of counsel), New York City, for defendant.

provides for a refund of the commitment fee in the amount of either $200,000 or $265,000.

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge.

This is an action to recover for the loss of an antique *bureau plat* or writing desk of the Louis XVI period which was purportedly made by the well-known French *ébéniste*, or cabinetmaker, C.C. Saunier (the "Desk"). The parties in this matter entered into a stipulation whereby defendant agreed to pay to plaintiff a sum equal to eighty percent (80%) of the value of the Desk at the time of its loss or destruction, namely September 25, 1985, but not to exceed the amount demanded in plaintiff's complaint, plus interest accrued from that date through the date of this Order, and thereafter until the amount is paid at the judicial rate prevailing in this Court. The stipulation further provides that all other claims asserted herein are dismissed with prejudice.

This Court held a non-jury trial on November 19, 1990 for the sole purpose of determining the value of the Desk on the date of its loss. After considering the evidence presented by both plaintiff and defendant, the Court has determined that the fair market value of the Desk, as of September 25, 1985, was $65,000. This opinion incorporates the Court's findings of fact and conclusions of law pursuant to Fed.R. Civ.P. 52(a).

## BACKGROUND

Plaintiff, Baudouin Dunand, purports to be the assignee of Claude Sere, the owner of the Desk. Defendant, Bowling Green Storage & Van Co. ("Bowling Green"), is a common carrier and warehouseman located in Yonkers, New York. The action was begun in New York state court and removed by defendant.

It is undisputed that in September 1985, Bowling Green was retained by Corstjens, an international freight forwarder, to receive the Desk in New York from the vessel "American Envoy," which had sailed from Rotterdam in August 1985. As provided, Bowling Green picked up the Desk at a Staten Island dock for carriage to its warehouse. Sometime later, Bowling Green reported the desk missing.

Numerous searches of Bowling Green's warehouse, conducted from November 1985 through August 1986, failed to locate the Desk. Bowling Green suggests it is likely that the Desk was inadvertently discarded.

## DISCUSSION

Defendant argued at the start of trial that the Desk must not be valued at a figure in excess of $10,000. Defendant claimed that plaintiff's customs declaration and insurance statement, both of which represented the estimated value of the Desk to be $10,000, equitably estop plaintiff from introducing evidence at trial to prove the value of the Desk to be greater than $10,000. Defendant asserted that "[i]t was entitled to rely on [the insurance declaration and customs declaration] ... as recognized indications of value." Defendant's Brief, at 3. Defendant further suggested that had it known that plaintiff had a "secret, higher valuation in mind" it might have used different handling procedures.

Defendant's implication that it relied on these documents for purposes of determining whether or not to accept consignment of the desk or what security precautions should be taken to prevent its loss is not persuasive. Defendant should have known that such documents reflect neither the market value of the Desk nor even plaintiff's estimate thereof. Mr. Claude Sere, the owner of the Desk, testified that as a matter of practice he never insures any works of art during transport. Mr. Sere explained that in this instance, Mr. Joseph Corstjens, the owner of freight forwarding company that had stored the Desk prior to shipping, "forced" him to place a valuation on the Desk for insurance purposes. Mr. Sere explained

> I refused to give him [Mr. Corstjens] a value and he insist [sic] and saying, "You must give me a value of something." So I said, "Put anything, put 10,000 if you want."

Trial Transcript, at 28. Based upon Mr. Sere's testimony, it appears that the customs declaration and insurance statement were merely formalities required by the freight forwarder and were not intended to provide an accurate valuation upon which defendant should have relied.

■ The Court was presented with sharply conflicting testimony with respect to the value of the Desk as of September 25, 1985. At trial, plaintiff offered the expert testimony of Mr. Jean–Marie Van Isacker, an assistant vice-president at Christie, Manson & Woods International, Inc. in New York, and Mr. Charles Canet, an expert in 18th century French furniture for the Paris Court of Appeals. Defendant offered the expert testimony of Mr. Barry Leo Delaney, a decorative arts specialist with the concern of O'Toole–Ewald Art Associates, Inc. of New York. After inspecting a photograph of the Desk and reviewing a detailed description of the Desk from Mr. Canet, Mr. Van Isacker testified that the Desk was worth approximately $200,-000 to $250,000 in May 1987. Mr. Canet, after physically examining the Desk in December 1984, appraised the Desk for 1,000,-000 to 1,250,000 French Francs as of February 14, 1986.[1] Mr. Delaney appraised the Desk for $45,000, relying on a photograph of the Desk and a description of the Desk provided by Mr. Canet.[2]

The Court questions the accuracy of all these appraisals.

Although defendant's expert, Mr. Delaney, never physically inspected the Desk and was uncertain as to the authenticity of the Desk and its artistic detail, he nevertheless valued the Desk at $45,000. Mr. Delaney based this valuation on an inspection of an admittedly poor photograph of the Desk and a description provided by Mr. Canet. Mr. Delaney further relied on the sales of comparable desks made by cabinetmakers other than C.C. Saunier in auction houses throughout New York during the relevant period.

The Court is unable to accept Mr. Delaney's appraisal as the value of the Desk on September 25, 1985 in view of his reservations about the authenticity of the Desk and his lack of opportunity for a physical inspection of it. Throughout his testimony, Mr. Delaney was evasive on the issue of whether or not he accepted Mr. Canet's description of the Desk at "face value." At first, Mr. Delaney testified that he accepted Mr. Canet's report at "face value" because he could not physically examine the Desk nor make exact measurements. On cross-examination, however, he explained that he disregarded certain aspects of Canet's appraisal and completed his appraisal without determining conclusively whether or not the Desk was a Louis XVI desk by Saunier or even whether it was made of mahogany. The following colloquy, in which the Court incorporated Mr. Canet's description of the Desk in a hypothetical question, is of particular note:

> THE COURT: But suppose you had affidavits from ten out of the leading ten experts on Louis XVI furniture who said we have all examined the desk and it is stamped as having been made by Saunier and we conclude that it's made by Saunier and that it was made during the Louis XVI period and that it is in excellent condition with no restoration and that it is covered in veined [mahogany] with the original gilt bronze fittings, would you have rendered a higher appraisal [than $45,000]?
>
> THE WITNESS [Mr. Delaney]: I might have, yes.

Trial Transcript, at 128–129. The Court therefore finds that Mr. Delaney's testimony furnishes no reliable basis for valuation of the Desk.

Plaintiff's expert, Mr. Van Isacker, placed a value on the Desk at a figure between $200,000 to $250,000. However,

---

1. The exchange rate as of February 14, 1986 was 7.22 FF = $1.00 USD. This rate yields a valuation of between $138,504.15 and $173,130.19 according to the figures provided in Mr. Canet's testimony.

2. Mr. Delaney valued the Desk at what he termed the "retail value" of the Desk, which he testified was higher than the "fair market" or auction value of the Desk.

the method he claims to have used to reach that figure yields a different valuation when employed by the Court. Both Mr. Van Isacker and Mr. Canet based their valuations of the Desk, at least in part, on the appraised value of comparable desks during the time period in question. A review of such "comparable" desks by the Court, however, does not substantiate the appraisal range offered by plaintiff's experts.

Unfortunately, the Court was not provided with a 1985 appraisal of a "comparable" desk in which it could place any confidence. The Court was furnished, however, with a 1987 auction catalogue of Sotheby's, Inc. ("Sotheby's") showing a number of antique French desks. The most comparable was a Louis XVI desk made by the French cabinetmaker, Benneman, which was the subject of extensive testimony. Although the Benneman desk, appraised at $70,000 to $90,000 in Sotheby's 1987 catalogue, was of slightly higher value than the Saunier desk at issue, the Court finds that it may nonetheless serve as an appropriate basis for comparison.[3]

Mr. Van Isacker testified that the appraisals in Sotheby's auction catalogues were based on "comparable sales prior to the time of that appraisal," Trial Transcript, at 90, and, as a reflection of the art market's recent price history, offer some indication of the value of comparable pieces of art in the years immediately preceding the catalogue publication. The Court accordingly views Sotheby's 1987 auction catalogue as a useful starting point in its calculation of the value of the Saunier Desk.

Mr. Van Isacker also testified that market prices for 18th century French furniture appreciated at a rate of 5% to 10% per year during the relevant period, Trial Transcript, at 94. Based upon that evidence, the Court deduces that the Benneman desk, was worth between approximately $63,000 and $81,000 in September 1985.[4]

It follows, therefore, that the Saunier Desk, being somewhat less valuable than that of Benneman, would have been worth somewhere near the lower end of the range of $63,000 to $81,000.[5]

## CONCLUSION

The Court accordingly finds that the Desk was worth $65,000 on September 25, 1985. Judgment against defendant will be entered in favor of plaintiff in the amount of 80% of $65,000, or $52,000, plus prejudgment interest at the rate of 9% per annum from September 25, 1985.

Settle judgment order on 10 days' notice.

SO ORDERED.

---

3. While Mr. Van Isacker concurred with Mr. Canet's assertion that "the Saunier stamp is an interesting stamp, but there are much better," he went on to conclude that a Benneman stamp could nonetheless serve as a basis for comparison with Saunier.

4. The Court assumed that the catalogue appraisal of the Benneman desk was based on market prices in about March 1987, and discounted the appraisal figure at a rate of 7.5% for a period of eighteen months to determine the value of the Benneman desk in September 1985. The figure of 7.5% is the average annual rate of appreciation for 18th century French furniture, according to the testimony of Mr. Van Isacker.

5. The Court acknowledges the fact that, in spite of a lower catalogue appraisal, the Benneman desk sold at auction for $200,000 in May 1987.

The 1987 sale figure, however, is of only marginal relevance to this computation. Unlike the catalogue appraisal which was derived from *bureau plat* sales over an extended period of time, the auction sale price reflects an isolated transaction that may be idiosyncratic rather than an accurate reflection of the general market. The 1987 catalogue price of the Benneman desk is crucial to the Court's analysis precisely because it is based on the prices in a number of sales of comparable desks in 1985 and 1986, increased to reflect the appreciation of prices up to shortly before May 1987. Sotheby's appraisal of the Benneman desk at a figure between $70,000 and $90,000 in 1987 suggests that comparable pieces sold for less in 1985.